FIELD, P.,
on the re-hearing. I have heard, with pleasure, the re-argument of this cause by the two able counsel who engaged in the discussion, and with an increased interest and pleasure, from the belief that each gentleman, whilst zealously discharging his professional duty, was endeavoring, with all the powers of his mind and eloquence, to enforce the candid and thorough convictions of his own understanding upon the question before us. Upon their arguments we have bestowed, willingly, the most mature reflection and consideration — yet, because some of us see through the glass, as it were, darkly, we remain of the same opinion still — and although I will not presume to impute error of opinion to any of my brother judges who differ from me, yet with-no intentional disrespect to theirs, I wish to say something in vindication of my own.
In the opinion heretofore delivered by me, I remarked substantially “that until we should ascertain-the portion of a preter-mitted posthumous child in the father’s estate, we must lose sight of the will.” The law under consideration prescribes that the child shall have “the same portion of the father’s estate as it would have been entitled to if the father had died intestate.” Whatever may be the real fact, as to whether the testator made a will disposing of.his whole estate, which is an absolute intestacy, and in which case the doctrine of bringing advancements into hotchpot applies, or whether he made a will disposing of part onty of his estate, which is a partial intestacy, and to which the doctrines of hotch-pot do not apply, (as the law was until our Code of 1849 took effect,) is a matter wholly immaterial in this case; because in all cases, in which a pretermitted child has a right to claim a portion of his father’s estate under the law, that portion is to be ascertained, as if the father had died intestate, ^(meaning an absolute intestacy; not partial,) and therefore whether the testator died partially intestate or otherwise, the claim of the posthumous child is to be ascertained, as if he had died intestate absolutely — a consequence of ■which is; to made the doctrine of advancements and hotchpot applicable to the case. The fact is, however, that the testator, John Macon, disposed of his whole estate by a residuary clause in favor of-his son Robert and his four daughters, and left nothing undisposed of by will; so that there can be no reason whatever, why the discussion of this case, should be influenced by any considerations of a supposed partial intestacy.
The operation of the law in this case, *599 does not revoke the will of the testator, nor is its force or effect to be at all changed or modified. On the contrary, the validity of the will ip fully recognized, and each dev-' isee and legatee will be entitled to take, in kind, the specific article devised or bequeathed to him; but is to take, subject to that provision in the law, which subjects him to a pro rata contribution towards raising the portion of the posthumous child. In this way the value of the devises and bequests will be diminished, but without in anywise revoking or modifying the will, or impairing the force and effect of its provisions. There’is no inconsistency nor contradiction, and surely nothing illegal therefore, in permitting a legatee to take the full amount of his bequest under the will, although in ascertaining the posthumous child’s portion, he may have stood off with a large advancement, and been considered as excluded, because the 1 advancement was not' brought into hotchpot. 1
Much stress has been placed on the words “the father’s estate,” found in the law. These words were necessarily placed there, to give sense and meaning to the sentence. They were not inserted to inhibit the raising of the portion out of property, that did not belong to the father. What other but the father’s property could be taken for the purpose? then where *was the necessity for, or the propriety in using restraining words, to limit the operation o.f the statute to the father’s estate, and thus shield and protect the property of other people, (property given by way of advancement for example,) from the claim of the posthumous child. It would appear to be, strangely oblivious in the Legislature, to deem it necessary to use°words to restrain the operation of a law within certain bounds, when the law could not, under any circumstances, be construed to operate beyond those bounds. When a father advances property to a child, it ceases to be the property.of the father, and becomes the absolute property of the child, as much so, as if it had been bought and paid for in dollars and cents. It may afterwards be accounted for by the child, and brought into hotchpot; but that does not restore the ownership thereof to the parent or to his estate, and make the property a part of his estate. If it had that effect, then executors might claim commission on the amount; and in all cases in which a child should afterwards be called upon by the executor or creditors of the father, to make good the condition of a refunding bond, by contributing such child’s ratable proportion of any debts or demands, that had subsequently appeared against the father’s estate, , he would have to make a contribution, not only upon the property he had taken of the executor, as •distributee, but also upon the amount of the advancement so brought into hotchpot. No one will pretend that the child, under such circumstances, would be bound to make that contribution ; these views ought, I think, to be conclusive to show, that advancements brought into hotchpot, do not become a part of the father’s estate. If this be not the law, a child might be made, in a case which required it, to refund, not 1 only all that he had received from the executor, but an amount besides, equal to the full value of the advancement.
To say that an advancement, when brought into hotchpot, thereby becomes a part of the father’s estate, for any purpose whatever, is a misdescription of its true ^character. . Let us, for a moment, consider what it is. To bring an advancement into hotchpot, is substantially an agreement or claim on the part of the; child, that after giving to the other chiídreri, respectively, as much as he had received ,by advancement, he is to come in and have an equal share of what is left. In practice this end 'is accomplished, not bj' the inconvenient and troublesome, if not to say silly operation, of handing out to the unadvanced children so much of their father’s estate, as will make them equal to the advanced child, and then to divide the residue equally among all the children ; but it is accomplished by the more plain, simple, and convenient way, of adding the amount of the advancement to the value of the father’s estate, dividing by the number of children, and charging the advanced child with the amount of the advancement. In neither caséis the advancement actually brought forth, except like an item of debt in a mercantile account, which is to be balanced by a cross entry. Its effect is, not to give to the other children ‘any share or lot in advancements, but only to increase their share of the father’s estate, so that, in fact, what the other children do get,' consists entirely of what was the property Of the father at the time of his death; and so, also, upon the same'principle, what the posthumous child is to get consists entirely of property that belonged to the father at the timé of his death, and is truly in the language of the law “of thé father’s estate.”
By the act of descents and distribution, in' force when the testator, John Macon, died, it was provided, that when a man died, leaving a widow and children, after allotting to the widow one-third of the land as dower, the residue passed to the children in coparcenary, and after payment of debts, &c., and allowing to the widow her part of the personal estate, the residue passed to the children, share and share alike, subject to this qualification, that if either of the children had received an ‘ advancement of land from the father in his life, the *value of the advancement should be brought into hotchpot; or a child so advanced, and refusing to bring the advancement into hotchpot, should be excluded as an heir, from the division of the land.
Also, if any of the children had received personal estate of the father in his lifetime, by way of advancement, such children, should either bring its value into hotchpot, or be excluded from sharing in the distribution of the personal estate. It being a matter of choice with the advanced child, either to hold to his advancement *600 and stand off, or to come in with his advancement and share in the division and distribution, the practical operation of the law in all cases has been, that the child has brought his advancement into hotchpot, where, by doing so, he could get a share of the father’s estate; but where, from the large amount of the advancement, nothing more would be coming to him, he has stood ofE with his advancement, and been, of course, excluded from the division and distribution ; and the estate was divisable amongst the other children.
The law under which Mrs. Wilson claims to be entitled to a share of her father’s estate, provides for a posthumous preter-mitted child, the same portion of the father’s estate, as such child would have been entitled to if the father had died intestate. It is, therefore, a vain thing to expect to find out the share of Mrs. Wilson in her father’s estate, unless we shall, in making the enquiry, consider that John Macon died intestate, and proceed, in all respects, according to the statutes of descents and distributions, and the practice which prevails under them. John Macon, in this stage of the question, must be regarded as having died absolutely intestate, unless we proceed upon this supposition, and make all the deductions which follow, as necessary consequences. In so proceeding, it' does seem to me that we depart from the rule which the law has prescribed, and withhold from Mrs. Wilson her legal rights under the statute.
To illustrate my views in this case, and to exemplif3T *the' principles which should govern the case, I will, for the present, dismiss from my mind the consideration of the rights of Mrs. Wilson, and will make the supposition of two cases, in each of which a posthumous child was born after the death of the father. For convenience sake, I will say nothing about the claims of the widow, of creditors, or of expenses of administration, and will regard them as otherwise provided for.
■ The first is the case of A. B., who dies possessed of an estate of $20,000. He makes a will, by which he gives to his four children his estate of $20,000, in, the following proportions, to wit:

After the death of A B his son G B is horn. He is pretermitted in the will.
The other is the case of O P, who dies intestate, possessed of an estate of $20,000, and leaves four children — R P, S P, T P and U P.
ToEPhe had advanced.$10,000
To S P " " .4,000
To TP “ “ .2,000
To U P nothing.0,000
A posthumous child, V P, is horn.
Here are two cases which are in all respects (with one exception) literally parallel with each other. The amount of the estate in each case is the same, the amount of advancements the same, the- number of children the same, and the birth of a posthumous child the same. The onljT difference between the two cases is, that in one case A B made a will, in the other O P died intestate; but, as in A B’s case, we are to regard him as having died intestate, the two cases are to be regarded as perfectly parallel in all respects.
*If these two supposed cases be parallel in all respects, it must follow, as a corollary, that the portion of the posthumous child in such case, will be the same in amount. The annexed statement will shew the portion of the posthumous child in the intestate case:

That this result is correct I presume every one will concede. It shews that, in this intestate case, the share of the posthumous child, V P, is $6,500. Now, if the share of the pretermitted posthumous child, in the other cdsé, is to be thesdmeas if the father had died intestate, his share, of course, would be the same — that is to sa3q it would be $6,500 — and yet, according to the opinion of those who differ from me, his portion amounts to the sum of $4,000 only. They would exclude the advancements, and divide 20,000 by 5. This difference can arise in no other way than by considering that the will of A B has a material bearing on the question ; and from considerations growing out of the will, this difference of $2,500, in the portions of the two posthumous children, is produced. What then, I ask, has become of the rule prescribed in the statute, which gives to the posthumous child the same portion of his father’s estate, that he would have been entitled to, if his father had died intestate?
*Upon this branch of the question I *601 have nothing more to say; and not much on the other branch.
The remaining question to be considered is this: How is the portion of the posthumous child to be raised? The words of the law furnish the best and most authoritative solution to this enquiry, “towards raising which portion the devisees and legatees shall contribute proportionabljr out of the parts devised and bequeathed to them by the same last will and testament.” These words establish three propositions:
1. That the portion (the whole of it) is to be raised out of the father’s estate.
2. That it is to be raised by a pro rata contribution.
3. That the devisees and legatees are to make this contribution out of the parts devised pro rata.
These words also establish the converse of the first and third propositions — that is to say:
1. That the portion is not to be raised out of advancements; and
2. That the contribution is not to be made in respect to advancements, but out of the parts devised and bequeathed to the devisees and legatees.
We have, therefore, nothing more to do with advancements. The reason for taking advancements into our consideration, in ascertaining the amount of the portion, has nothing to do with the question, “how is the portion to be raised?” The recollection of advancements should be as completely obliterated from our minds, in solving this question, as the existence of the will was, or ought to have been, in considering the first question. The amount of the portion of G B, in the case supposed, is $6,500, towards raising which C B must contribute $1,625, D B $650, E B $2,925, and F B $1,300 — which several sums make $6,500.
It may be said to be unreasonable and unjust, to permit C B, who had received an advancement of $10,000, and who had stood off, to come in now, and receive his full legacy of $5,000 under the will, and *not be made to contribute anything on account of his advancement of $10,000; and to affow D B and E B, who had received advancements of $4,000 and $2,000, to take the full amount of their legacies, without being made to contribute anything on account of those advancements, more especially as the effect was to subject F B, who had received no advancements, to the responsibility of contributing more than would have been required of him, if those advancements had not been brought into hotchpot. Eet it be conceded, for the sake of the argument, that to permit this to be done is both unreasonable and unjust. Eet me ask whether these are proper elements to be considered in construing a law, the import and meaning of which, ' in the absence of those elements, is plain and unequivocal? If they are, what will be thought of the operation of the law upon a case like the following? A father possessed of money to the amount $119,800, gives to each of his five children, in his life-time, $20,000, and by will bequeaths the residue of his estate, being $19,800, to ten strangers, share and share alike — a pretermitted posthumous child is then born. According to my construction of the law, the five children having been advanced by the father with $20,000 in his life, (exceeding the amount of the whole estate, left by the testator, b3T $200,) would be excluded from a division, and there being no child left to divide with the posthumous child, he would take, as his portion, $19,800. But, according to that rule, which is to be laid down as the law of this case, the $19,800 would have to be divided by the number six — the aggregate number of all the children, including the posthumous child — giving to the posthumous child only $3,300. ■ The ten strangers would have the balance. Surely, this would be a hard case. One not the less galling to the child, when he reflects, that whilst he gets of his father’s immense estate only $3,300, each of the other children has received $20,000, and ten strangers the remaining $16,500.
‘’’Applying the principles of the foregoing opinion to the case under consideration, I should reverse the decree, and direct the proper accounts to be taken; but it being the opinion of a majority of the court, that there is no error in the record, the decree is to be affirmed with costs.